No. 795.

ALCEE DUPRE *v.* J. M. THOMPSON, Sheriff, et al. PETER MARCY, Intervenor.

Where plaintiff whose property, as he claimed, was seized by virtue of a judgment in the suit of Marcy *v.* McKinney, injoined said execution and excepted to the right of defendants and intervenor to thus attack his title collaterally, but averred that they must do so by a direct revocatory action contradictorily with all the parties to the tax sales at which he acquired the property, and further excepted that they had neither alleged nor suffered any injury by said sales;

Held—That the court *a qua* erred in maintaining the exceptions of plaintiff to the right of the intervenor and defendants to contest the validity of the tax sales under which plaintiff holds.

The intervenor was the holder of notes secured by a mortgage importing a confession of judgment and containing the pact *de non alienando,* which authorized him to pursue the mortgaged property in the hands of the third possessor, and the latter, when he injoined him in so doing, assumed the burden of showing that the sale at which he acquired the mortgaged property divested the rights of the mortgagee thereon.

APPEAL from the Eighth Judicial District Court, parish of St. Landry. *King, J. Henry L. Garland,* for plaintiff and appellee. *Martel* and *Hudspeth* for defendants and appellants.

HOWELL, J. The plaintiff, as owner, injoined the Sheriff and his deputy from executing a judgment in the suit of P. Marcy *v.* K. W. McKinney, on a certain plantation, and from demolishing or removing the houses, fences and cisterns therefrom.

The defendants pleaded a general denial, but admitted the attempt to dispossess the plaintiff by executing, in their official capacity, a writ of fieri facias in the cause of Peter Marcy *v.* K. W. McKinney, and in an amended answer they aver that all the formalities were observed and notices given in the execution of the said judgment, that plaintiff, asserting a claim to the mortgaged property, was notified as third possessor and the execution proceeded with, the sale under which he claims being void on its face, and McKinney remaining in possession.

Peter Marcy intervened to defend the suit, alleging that he has a judgment against the said McKinney recognizing a mortgage on the property in controversy, on which he caused an *alias fi. fa.,* to issue; that plaintiff, claiming to be the owner, has injoined the same without making intervenor a party; that plaintiff has no title to said property, his pretended title being derived from two tax sales, made without observing any of the formalities of law and in collusion between him

and McKinney to defraud creditors, and specially plaintiff; that after the said tax sales, intervenor, learning that McKinney, in order to defraud him, had obligated himself to plaintiff not to redeem the said property, did, within the legal delay, offer and tender to plaintiff the amount of the purchase price, principal and interest, costs and penalty, which was refused on the ground that the land could be redeemed only by McKinney; and that, before proceeding with the execution, the notices and demands necessary in hypothecary actions were made and given ; and he prayed that the title of plaintiff be declared null, the injunction be dissolved, and plaintiff condemned to pay damages for retaining said property in possession.   In an amended petition he avers further that he was joined by said McKinney in the offer to redeem the said land, which offer, within the legal delay, defeated plaintiff's title, which was affected by a resolutory condition ; that plaintiff never had possession of the land which remained in McKinney ; and he prays that the injunction be dissolved and the sheriff ordered to proceed according to law with the execution.

Plaintiff excepted to the right of intervenor and defendants to thus attack his title collaterally but averred that they must do so by a direct revocatory action contradictorily with all the parties to the said tax sales, and further that they have neither alleged nor suffered any injury by the said sales, as at their dates the said property was affected with a special mortgage, superior to that of intervenor's, in an amount double the value of the property.

It seems that those exceptions were tried at the same time as the merits, and were maintained, and the intervenor and defendants were not permitted to introduce any evidence on the subject; and upon the trial on the other issues judgment was rendered in favor of plaintiff against the defendants and intervenor perpetuating the injunction, from which the latter have appealed.

We are of opinion that the court erred in maintaining the exceptions. The intervenor was the holder of notes secured by a mortgage importing a confession of judgment and containing the pact *de non alienando* which authorized him to pursue the mortgaged property in the hands of a third possessor or owner, and when the latter injoined him in so doing he assumed the burden of showing that the sale at which he acquired the mortgaged property divested the rights of the mortgagee thereon, and by the jurisprudence of this State, one relying on a tax sale, made prior to the present constitution, must show the existence and legality of the assessment, which stands in such case in lieu of the judgment in ordinary judicial sales; the deed of the tax collector will not be sufficient to establish his title.   6 N. S. 348 ; 7 L. 50; 10 L. 283; 4 An. 248 ; 14 An. 209.   In a tax sale, every formality of law must be strictly complied with under penalty of nullity, and the only question here is

whether the observance of these formalities can be inquired into in this form of proceeding, or must the mortgagee, in whose favor there is a pact *de non alienando*, resort to a direct revocatory action, As said above, we can perceive no good reason for requiring a resort to a direct revocatory action. The State can not be made a party, and as to the tax defaulter, the purchasers may be viewed as representing him in relation to the forms of proceeding. If the formalities have been observed, the title is good without reference to the charge of subsequent collusion, and if not observed, the title is not good, whether there was collusion or not. We must conclude that the regularity and validity of the tax sale, in this particular instance, may be raised by the plaintiff in the execution, and for this purpose it becomes necessary to remand the cause. It is unnecessary in this view of the case to pass on the bills of exception in the record.

It is therefore ordered that the judgment appealed from be reversed, that the exceptions of plaintiff to the right of the intervenor and defendants to contest the validity of the tax sale under which plaintiff holds, be overruled, and that this cause be remanded with instructions to the lower court to hear evidence on the subject, and otherwise to proceed according to law.

Plaintiff to pay costs of appeal.

---

LUDELING, C. J. I concur in the opinion of Mr. Justice Howell. The mortgagee held a conventional mortgage with the " pact *de non alienando* " on the property in controversy.

That clause gave the right to seize the property, into whosoever's hands it passed.

When he exercised this right, he was injoined by the plaintiff, who alleged he was the owner of the property. This did not authorize the injunction. It is contended that, because the plaintiff in injunction bought at a tax sale, the mortgage was destroyed. That is the very question for decision. And I can not discover any good reason for refusing to permit that question to be determined in this case.

---

WYLY, J., *dissenting*. The question is, can the title of the purchaser at tax sale be attacked collaterally by a judgment creditor of the former owner, which judgment is based upon a debt secured by mortgage with the pact *de non alienando ?*

The sale before us is presumed to be valid, because the officers of the State are presumed to have done their duty in assessing the taxes and in alienating the property to enforce the collection thereof.

If the formalities of law have been observed (which we are bound to

presume) this sale freed the property of the mortgage now sought to be enforced aginst it, because the debt for which it was sold is of higher rank than the mortgage. The privilege for taxes is superior to any mortgage granted by the former owner. No one can encumber his property so as to defeat the right of the State to enforce the collection of its revenues.

It is well settled that a sale enforcing a superior mortgage or privilege relieves the property from subordinate incumbrances. A junior mortgage creditor, finding that the property has been sold under a superior mortgage, and believing that the formalities of law were not observed in the foreclosure of the prior mortgage, can not attack the sale collaterally, by seizing the property under his own judgment. He must bring a direct action.

The fact that his mortgage contains the non alienation clause is of no consequence. If the sale under the prior mortgage was formal and the proceedings regular, it wiped out the junior mortgage. It relieved the property entirely of it. The non alienation clause, of course, falls with the mortgage.

The sale under a prior mortgage, unless affected with an absolute nullity, can not be disregarded by a junior mortgage creditor, whether his mortgage contains the pact *de non alienando* or not. For relative nullities it must be attacked in a direct action.

Here the plaintiff is in possession under a recorded title ostensibly valid, and the sale at which he bought was to enforce a debt superior in rank to that of the attacking mortgage creditor.

Until that sale is set aside in a revocatory action, contradictorily with all parties in interest, in my opinion, the mortgage creditor can not proceed to enforce his mortgage; because whether he has a mortgage or not still existing on the property, depends upon the result of the inquiry whether the sale to enforce the superior debt was formal and valid Until this result is ascertained, in a proper proceeding, the formalities necessary in a tax sale are presumed to have been observed by the officers of the State; and the sale to the plaintiff is presumed to be valid.

It is only simulated sales that may be disregarded; actual contracts, though in fraud of creditors, must be attacked in a direct action.

In my opinion Peter Marcy, the mortgage creditor, has mistaken his remedy. He had no right to seize the property and treat the title of the plaintiff as an absolute nullity.

In this proceeding, which is an injunction suit, he can not assail the title of the plaintiff and have its nullity pronounced, because neither the tax collector nor McKinney, the debtor for the taxes, are made parties. I have never heard of a sale being annulled by a court in the absence of the parties thereof.

Dupre v. Thompson, Sheriff, et al.

The plaintiff, the purchaser, is the only party to the sale who is 'before the court, yet it is gravely insisted that it is proper for the ·court to pronounce the nullity of the sale and thereby destroy the contract, condemning parties without a hearing.

A tax sale is a lawful sale and like every other forced alienation, it is liable to be avoided for relative nullities. But I have yet to learn that the form of proceeding to ascertain these relative nullities is different in a tax sale from that in a judicial sale. Both kinds of sale are made upon the faith of the State. They are not snares laid to entrap honest bidders. The title given by the State, like that acquired at a judicial sale, is presumed to be valid, until the contrary is shown in a legal manner.

A title derived at such sale forms no exception to the universal rule that actual sales can only be annulled in a direct action contradictorily with all the parties thereto.

For the reasons stated I deem it my duty to dissent in this case.

See 23 An. 44, 331; 13 An. 155; 14 An. 560; 17 L. 517; 6 R. 21; 6 R. 152; 14 An. 495; 4 An. 439; 3 L. 476; 1 An. 297; 6 L. 268; 9 L. ·542; 4 L. 473; 8 L. 423; 1 L. 491; 11 L. 438.